## Case No. 17,223.

### The WASHINGTON.

[12 N. Y. Leg. Obs. 163.]

District Court, S. D. New York. June, 1854.[1]

COLLISION — PRESUMPTION OF NEGLIGENCE — BOAT NOT PROPERLY MANNED.

1. In cases of collision between steamboats, the one being properly officered and manned, and the other not, where there is doubt on the evidence, such doubt is construed against the vessel not properly officered and manned, where it appears that her engine was not reversed until upon the point of collision.

2. Such presumption of negligence must be explained by satisfactory testimony: and where the evidence as to the course of the two ves-

---

[1] [Affirmed in Case No. 17,220.]

sels the moment before the collision was balanced, the court referred to and was governed by the evidence of a disinterested by-stander looking upon the occurrence.

3. Steamboats meeting each other in parallel courses, and going in opposite directions, must each take the right, passing each other's larboard sides.

Tho steamboat Peter Crary, owned by the libellants, came in collision in the harbor of New York, on the evening of Oct. 17th, 1853, about 200 feet outside of piers Nos. 5 and 6, in the North river, with the steamboat Washington, by which the Crary was seriously injured, and, to recover the damages occasioned to her thereby, this suit was brought. The weather was calm and pleasant, with a gentle breeze, and the tide was flood; the evening was clear and moon light, and the channel unobstructed. The Crary was bound up the river to her berth, and the Washington was going round into the East river. Both vessels were tow-boats. The libellants were, one of them the pilot, and the other the engineer, of the Peter Crary, and were both experienced in their business. The pilot of the Washington had never taken charge of a boat as pilot until about a week before the collision, having been previously a cooper, but for some months had occasionally taken the wheel under the superintendence of the pilot. The engineer of the Washington was also of questionable competency; the engine, however, was not in his charge at the time of the collision. The libellants allege that after rounding the battery, the Crary took a straight course up the river about 150 feet outside of the piers, and that the Washington was further out, or at least as far. That the Crary steered to the right according to the law, but that the Washington steered in to the left, and struck the Crary on the larboard side, about six feet aft of the stem. The claimants averred that the Crary was coming up the river outside of the Washington, and suddenly turned in towards the piers across the Washington's bows, and that after that nothing could have been done on the part of the Washington to avoid the collision. The engine of the Washington was stopped, but not reversed, while that of the Crary was both stopped and reversed.

D. McMahon, for libellants.
W. Q. Morton, for claimants.

INGERSOLL, District Judge. On the evening of the 17th day of October, 1853, the steamboat Peter Crary, owned by the libellants, and the steamboat Washington, came in collision in the harbor of New York, by which the Peter Crary received very serious injury. The place where the collision happened was in the North river, about opposite a point between piers No. 5 and No. 6, and from one to two hundred feet outside of the piers. At the time, the Peter Crary was proceeding from Williamsburgh, and was bound up the river to a berth at the foot of Harrison street, on the North river. The Washington was proceeding down the river, from a pier up the river, at the foot of Jay street, and was bound to the East river. The collision took place between seven and eight o'clock. The weather was calm and pleasant; there was but a gentle breeze; the tide was on the flood, and the evening was clear and moonlight. The navigation of the boats was not interfered with, or impeded or interrupted by other vessels. The channel was clear, and objects for a considerable distance could be distinctly seen by those who had charge of each boat, if they were attentive to their duty; and there is no claim that the movements of either boat was not under the control of those who had charge of it. It follows, then, very conclusively, that the collision was occasioned by the fault of some one; that it was not produced by some inevitable accident, or by the fault of any third party. This is admitted, and each charges the fault upon the other; and the question is, upon which boat is such fault justly chargeable?

Both boats were used for towing barges and other water craft in and about the harbor of New York, though at the time of the collision they were not so engaged. The Peter Crary had for her pilot Philip W. Rockfellow, one of the libellants, he being one of the owners of the boat. He was an experienced pilot, prudent and careful, competent and trustworthy, and at the time of the collision was at his post, at the wheel, in the pilot-house. The engineer was Mr. Ray, one of the other libellants, and also a part owner of the boat; he was a skilful and competent engineer, experienced in his business, prudent and careful. At the time of the collision he was at his post in the engine room, attending to his duties. The pilot of the Washington was a Mr. Lewis Duker; he had never taken charge of any boat as a pilot, or acted as an assistant pilot, until the 10th day of October, just a week before the collision; his occupation for some considerable period before that date had been that of a cooper, in the employ of the owners of the Washington. He continued to act as her pilot until some time in the month of the following December, when he ceased to be so employed. Since that time he has been doing nothing. For a few months previous to the 10th of October, and when he had no duties to perform on board the boat, he had, while on board of her, occasionally, with the permission of the pilot, and while he was standing by to superintend him, taken the wheel, with a view to qualify himself as a pilot; but at the time of the collision he was not so qualified, and was not competent to the duties required of a pilot of a boat navigating the waters of the harbor of New York. He had not the necessary skill, the necessary experience, the necessary nautical knowledge, required of a faithful pilot. The engineer of the Washington was a man by the name of George; he had acted as engineer only for a short time; a few months before he was a fireman of the boat; from the evidence given, his competency may well be doubted; at the time of the collision, he was not at his post; he had left it, and gone on deck, and

placed the engine in charge of an individual who was not attached to the boat, but who was an engineer in the sugar-house of the owners of the boat, and who, at the time, was on board the boat returning to his home. The bows of the Washington came in collision with the Peter Crary in her larboard quarter, about six or seven feet abaft her stern, by which about twenty feet of the Crary, from her deck to her water-line, was cut away, and she was greatly damaged. The Washington received but comparatively little injury; when the boats struck, the engine of the Crary was reversed; her bells, a short time before, having been rung to slow stop and back, in quick succession, and answered and obeyed by the engineer as they were rung. The engine of the Washington was not in motion; her bells to slow and stop had been rung a moment before the collision, and answered by the one having charge of the engine, as they were rung; her bells to back were not rung, and her engine was not reversed.

Upon these facts, there being nothing else in the case, the legal presumption of law would follow, that the fault was on the part of the Washington. She was not properly officered; she was not under the control of a proper pilot; the owners of the Washington were in fault in this respect. No such fault is imputable to the Crary. The Washington, therefore, must be holden responsible for the damage which the libellants have sustained, unless the respondents can, by evidence, remove the legal presumption which follows from the above recited facts; and the question is, does the evidence produced remove that legal presumption?

The claim of the libellants is, that after the Crary rounded the Battery, she took a straight course up the North river, and about one hundred or one hundred and fifty feet westerly of the piers, and in shore of the Washington, bound to her place of destination; that the Washington in her course down the river, was farther out from the piers; or, at all events, as far out as was the Crary; that to avoid any collision the Crary sheered to the right, as it was by law her duty to do; that by the mismanagement of the pilot of the Washington, the Washington sheered to the left, and struck the Crary in the way that has been described.

The claim of the respondents is, that, as the Washington was proceeding down the river, and before she arrived at the point where the collision took place, the Crary was seen by the pilot of the Washington rounding the Battery; that after she had rounded the Battery, she took a course across the river towards Jersey City, then a course directly up the river, and further west than was the course of the Washington; that the Crary suddenly turned her head due east, and directly towards the piers, and across the bows of the Washington; that after such change of course was discovered by the pilot of the Washington, by no movement on the part of the Washington could a collision be avoided; that, in order to avoid it, the Washington ported her helm, slowed and stop-

ped her engines, and that the collision took place without any fault on her part. As in most cases of this kind, the testimony of witnesses on board the two boats is very contradictory. As the presumption of law is from the facts as before found, that the Washington was in fault, it is the duty of the respondents, by clear proof, to remove that presumption; otherwise, it will remain. No such clear proof is brought forward. The libellants have produced two witnesses who were on board the Crary, to wit, the second engineer and one of the firemen, and also the individual who, at the time of the collision, was at the engine of the Washington. The pilot of the Crary and the chief engineer could not be examined by the libellants as witnesses, as they were the parties libellants. The respondents have introduced two witnesses who were on board the Washington, to wit, the pilot and another witness, who, at the time, was on board, but who had nothing to do with the management of the boat, but was in the employ of the owners of the Washington as a carman, and was a nephew to one of the owners. The weight of this evidence is in support of the claim as made by the libellants. Indeed, I cannot see how the collision could have taken place in the manner that it did if the position of the boats, a short time before the collision took place, as it respects distances and courses, was as is stated by the pilot of the Washington. In some material points that pilot is contradicted by facts, about which there can be no serious dispute. He states that when the collision took place, the Washington was heading outwardly from the piers; that he had put the helm aport. The evidence is perfectly satisfactory, that when the collision took place, the Washington was heading, according to the claim of the libellants, in towards the piers; that she had starboarded her helm. And a disinterested witness on board the Telegraph, then lying at pier No. 4, by his testimony fully supports the claim of the libellants, and is in direct conflict with that of the respondents.

The respondents have not, therefore, by clear and satisfactory proof, removed the legal presumption which exists against the Washington from the facts, as before recited. Indeed, the proof goes to establish and confirm that legal presumption. The finding of the court is, that the collision was occasioned by the fault of the Washington, and that no fault is attributable to those who had charge of the navigation of the Crary. The decree, therefore, is, that the libellants do recover the damage which they have sustained in consequence of the collision, and that it be referred to a commissioner to ascertain and report what that damage is.

[Upon an appeal to the circuit court, the decree was affirmed. Case No. 17,220.]

WASHINGTON (BANK OF THE UNITED STATES v.). See Case No. 940.